**Cleremont L. COVALT and Ahnighita M. Covalt, Plaintiffs–Appellants,**

**v.**

**CAREY CANADA, INC. and Union Carbide Corporation, Defendants–Appellees.**

No. 90–3126.

United States Court of Appeals, Seventh Circuit.

Argued May 14, 1991.

Decided Dec. 10, 1991.

Timothy E. Eble, Ness, Motley, Loadholt, Richardson & Poole, Barnwell, S.C. and Stephen L. Williams (argued), Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, Ind., for plaintiffs-appellants.

Michael A. Bergin (argued), Julia M. Blackwell, Karl M. Koons, III, Locke, Reynolds, Boyd & Weisell, Indianapolis, Ind., Raymond H. Modesitt, Patrick, Gabbert, Wilkinson, Goeller & Modesitt, Terre Haute, Ind., for defendant-appellee.

Before CUDAHY and MANION, Circuit Judges, and WILL, Senior District Judge.*

WILL, Senior District Judge.

Plaintiff Cleremont L. Covalt filed suit against Union Carbide Corporation and Carey Canada, Inc. in February, 1986 alleging personal injuries due to exposure to asbestos. In February, 1987 defendants moved for summary judgment based on the statute of limitations. That motion was denied, and the appeal of that denial to this court delayed the proceedings below until we affirmed in January, 1990. Union Carbide filed an alternative motion for summary judgment in June of 1987, but because of the earlier appeal it was not ruled on until August 22, 1990 when the district court granted summary judgment. Plaintiff appealed. It is this second motion for summary judgment that we review today. We reverse and remand.

### FACTS

Plaintiff–Appellant Cleremont L. Covalt was diagnosed with asbestosis in 1986. Mr. Covalt had worked with asbestos and asbestos related products from 1963 through 1971 when he was employed by Proko Industries at their plant in Cambridge City, Indiana. Proko used asbestos as a raw material in making other products, and Mr. Covalt was in contact with asbestos throughout his employment at Proko. Plaintiff filed suit against both Union Carbide and Carey Canada (not a party to this appeal). Mr. Covalt alleges that Union Carbide and Carey Canada had supplied the asbestos to which he was exposed at Proko.

Robert F. Wright is a former president of Proko Industries. In 1963 he became responsible for purchasing chrysotile asbestos fiber for Proko, and, of all the officers and employees of Proko, he has the best knowledge of purchases of asbestos fiber by Proko. From 1963 on Proko purchased asbestos from Carey Canada, Inc. Beginning in 1970 Proko also purchased asbestos from Union Carbide.

Union Carbide sold raw asbestos under the trade name "Calidria" from 1963 through 1985. Seventy-five percent of the sales were made directly by Union Carbide, twenty-five percent were made through distributors. All sales were to manufacturers; Calidria was not sold to end-users. Union Carbide's records showed 13 shipments of asbestos to Proko's plant in Cambridge City, Indiana, beginning in 1973. Union Carbide did not produce records relating to shipments to other Proko Plants.

### DISCUSSION

"We review the district court's decision to grant summary judgment *de novo* and utilize the same standard of decision making as that employed by the district court. *Christianson v. Colt Industries Operating Corp.*, 870 F.2d 1292, 1299 (7th Cir. 1989)." *McMillian v. Svetanoff*, 878 F.2d 186 (7th Cir.1989).

■ Defendant Union Carbide moved for summary judgment pursuant to Fed. R.Civ.P. 56, contending that the plaintiff could not show that he had been exposed to asbestos manufactured by defendant Union Carbide, a fact necessary to support his claims. At issue is whether the district court properly granted Union Carbide's motion. Rule 56(c) provides that:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The moving party is under no obligation to show that a fact necessary to the plaintiff's case is *not* true, but only to show that the plaintiff has not presented sufficient evidence that the fact *is* true. *Celotex Corp.*

* The Honorable Hubert L. Will of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

*v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

█ When Union Carbide filed its motion for summary judgment the only support for plaintiff's allegation that the asbestos he had been exposed to was manufactured by Union Carbide was a statement made by Mr. Covalt in response to Defendants' interrogatories. In response to a question about which products of the defendants' he may have come into contact with, Mr. Covalt said:

I came in contact with asbestos during my entire employment at Proko. It is my understanding that Union Carbide Corporation and Carey–Canada, Inc., supplied asbestos to Proko during my employment. [Interrog. # 18]

Mr. Covalt did not state the basis for his "understanding," and defendants did not press for a more complete response. Union Carbide denied selling asbestos to Proko during Covalt's employment there.

At this point Union Carbide had met its burden of showing that there was not sufficient evidence on the record to create a genuine dispute over whether Union Carbide manufactured the asbestos Mr. Covalt was exposed to.

Rule 56(e) states that:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

There is a genuine issue for trial "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Mr. Covalt responded to Union Carbide's motion for summary judgment by pointing to his "understanding" of who supplied asbestos to his employer, and to an affidavit from Robert F. Wright, former president of Proko. The district court correctly found that Mr. Covalt's "understanding" is not competent evidence of specific facts. If Mr. Covalt had given specific facts that formed the basis of his understanding then we would be obliged, as plaintiff's attorney urges us, to draw any reasonable inferences in Covalt's favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. However, Mr. Covalt's answer to interrogatory 18 is eloquently silent on the origins of his understanding. Standing alone it is just a statement of his opinion or belief; it is not a specific fact which gives rise to a genuine dispute.

The central issue is whether the affidavit of Mr. Wright raises a factual dispute when contrasted with the defendant's answer to plaintiff's second set of interrogatories. Union Carbide contends that their response to plaintiff's interrogatories proves that there was no Union Carbide asbestos present in Proko's Cambridge City plant until 1973, two years after Mr. Covalt left. Mr. Covalt contends that there was Union Carbide asbestos in the plant where he worked starting in 1970, when he was still employed there.

INTERROGATORY NO. 12:

Have you ever sold, distributed, or shipped raw asbestos fiber or any product containing asbestos, including Calidria, in any form or quantity to Proko Industries, Inc., Mesquite, Texas, or to any of Proko Industries plants, offices or facilities in any state?

RESPONSE:

Union Carbide also objects to this Interrogatory on the grounds that it is overly broad insofar as it fails to specify a relevant time period. See general objection 3. Subject to its objections, Union Carbide responds as follows: Union Carbide sold standard grade 21 (SG 210) Calidria asbestos T–135 opacifying agent (T–135), and High Purity Open (HPO) to Proko Industries located in Cambridge, Indiana.

INTERROGATORY NO. 13:

If the answer to the previous Interrogatory was in the affirmative, please state the following:

[5 sub-parts asking for dates, amounts, and other details of the shipments omitted]

RESPONSE:

See Union Carbide's Response to Interrogatory No. 12. Subject to its objections, Union Carbide responds as follows: See Exhibit "A", attached, for a copy of the portion of Union Carbide's data base of Calidria sales that sets forth the record of the sales that were made to Proko Industries. The first such sale occurred on October 17, 1973 and the last such sale occurred on February 22, 1977.

The exhibit referred to shows sales between the dates given to Proko Co. in Cambridge City, Indiana. Union Carbide was asked about sales to *any* Proko plant, and answered that, based on their records of "sales that were made to Proko Industries," they had made sales to Proko Co. in Indiana. There is no indication in Union Carbide's response that they sold asbestos to any other Proko plant, or that they intended to make only a partial response to the question.

To contradict these statements by Union Carbide, plaintiff submitted the affidavit of Robert F. Wright. The relevant portions state:

7. Beginning in 1963, when I became responsible for making the purchases of chrysotile asbestos fiber for Proko, through 1970, Proko purchased chrysotile asbestos fiber sold by Carey–Canada, Inc.

8. Beginning in 1970, Proko purchased chrysotile asbestos fiber sold by both Carey–Canada, Inc. and Union Carbide Corporation.

Given the clear statement by the man in charge of purchasing that Proko purchased Union Carbide asbestos beginning in 1970, two years before Mr. Covalt left Proko, plaintiff has identified a genuine dispute about a material fact. Given the evidence on the record there are three possibilities: (1) Union Carbide's records are incomplete and do not show shipments that were made to Proko from 1970–1972; (2) Union Carbide's answer was intended to cover only sales to Proko in Indiana; or, (3) Proko bought Union Carbide asbestos through one of the distributors who accounted for 25% of Union Carbide sales.[1]

At oral argument counsel for Union Carbide stated that the answer to plaintiff's general interrogatory only included records of sales to Proko's Indiana plant. He did not know if there were records of sales to other Proko plants. Even if Union Carbide's exhibit is intended to cover only shipments they made to Proko in Indiana, there are four possible interpretations of the data: (1) Union Carbide's records are incomplete; (2) all of the asbestos purchased from Union Carbide in 1970–1972 was shipped to Proko plants in other states; (3) Union Carbide asbestos shipped to Proko plants in other states was re-shipped to Indiana; or, (4) the asbestos was purchased from a distributor of Union Carbide asbestos, so the shipment does not appear on Union Carbide's records.

This range of possibilities is clear from the record, yet Judge Tinder concluded, "This evidence shows that no shipments were delivered to Proko Industries' *Cambridge City, Indiana* plant."[2] Slip Opinion at 8, emphasis in original. And Union Carbide contends that they provided direct evidence that its asbestos was *not present* at Mr. Covalt's workplace. Brief at 23. They did nothing of the kind. They showed only that they had no record of shipments to that plant before 1973, not that the asbestos was not present. Computer records are not perfect; they reflect only the input of fallible human beings. Even if the records are perfect, they do not account for the possibilities of shipments to Proko's Cambridge City plant from distributors or from other Proko plants.

The district court put great weight on the amount of detail in Union Carbide's description of shipments to Proko's Indiana plant, and contrasted that with the Wright

1. The extra link in the distribution chain would not relieve Union Carbide of liability, so this possibility still allows plaintffffs to prove their claim.

2. Presumably Judge Tinder meant that there were no direct deliveries during the time that Covalt worked there, since Union Carbide admits to deliveries later.

affidavit supplied by the plaintiff. Union Carbide's evidence included specific dates, amounts and places of shipment. Slip Opinion at 10. However, Mr. Covalt does not need such detail to make out his claim. Mr. Covalt could support his allegation that Union Carbide asbestos was present in his plant when he worked there with evidence that Union Carbide was the supplier of asbestos to Proko beginning in 1970. The exact dates or weights of shipments are not necessary. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. Thus, even if a jury would be more convinced by Union Carbide's evidence because of the wealth of detail, we may not take that into consideration when deciding on summary judgment.

"If, based on the record, inferences contrary to those drawn by the trial court are also plausible, summary judgment must be reversed." *Santiago v. Lane,* 894 F.2d 218, 223 (7th Cir.1990) (citing *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985).) The existence of *one possible* interpretation of the evidence that leaves no genuine issue of fact is irrelevant, if, as here, there are other interpretations, equally plausible, that leave a genuine issue of fact.

The district court relied in part upon *Posey v. Skyline Corp.,* 702 F.2d 102 (7th Cir.1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In that case affidavits from defendants stated that a required notice had been posted, based on the personal knowledge of one affiant. The plaintiff's affidavit stated that he regularly checked the bulletin board and that "he never saw and does not recall ever reading," the notice. The Seventh Circuit upheld the grant of summary judgment stating, "Posey's affidavit merely indicates that Posey never saw the ADEA notice, which is not the same as an averment that the notice was not in fact conspicuously posted." *Posey* at 106. Plaintiff's own affidavit makes clear that he is not sure that the notice was not posted, he states

that "he does not recall." And the majority in that case admitted that this was a close distinction to make. *Posey* at 106. Perhaps, as suggested by the dissent in *Posey,* the court did not give Posey the benefit of reasonable inferences, as it should have. *Posey* at 106 (Cudahy, J. dissenting).

When deciding a motion for summary judgment "[t]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor ..." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. Thus, Wright's affidavit that Proko purchased asbestos from Union Carbide beginning in 1970 is to be believed. Reasonable inferences—that some of the asbestos Proko purchased was sent to the Indiana plant where Mr. Covalt worked—are to be drawn in his favor. Viewing the evidence in the light most favorable to Mr. Covalt, and drawing all reasonable inferences in his favor, there was evidence that Union Carbide supplied at least some of the asbestos that caused his asbestosis, and he was entitled to have a jury evaluate the credibility of Mr. Wright and the reliability of Union Carbide's records.

Plaintiff's evidence may not be as complete as one would like to see presented, and it was the plaintiff's responsibility to seek additional discovery if he felt it was necessary, but the proper comparison is not to an ideal case, but to the minimum required to survive a motion for summary judgment. Mr. Covalt's evidence meets the minimum requirements. Wright's affidavit is not a mere "scintilla" of evidence (*Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512); the doubts it raises as to the completeness of Union Carbide's response to interrogatories and what the true facts are, are much more than metaphysical (*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). In short, there is "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat. Bank v. Cities Service,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569

(1968). On remand, the trial court may determine that, prior to trial, additional discovery (1) to complete Union Carbide's unnecessarily narrow responses to plaintiffs' interrogatories 12 and 13, (2) to ascertain the totality of Union Carbide or distributors' shipments of Union Carbide asbestos to various Proko plants and (3) if and when other Proko plants transferred Union Carbide asbestos to the Cambridge City plant is required. Such discovery should clarify the facts from which inferences can or cannot be drawn. The judgment of the district court is

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT HEREWITH.

CUDAHY, Circuit Judge, concurring.

I concur in reversal and remand for additional discovery.